IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**NOY KEMPF,**

    **Plaintiff,**

vs.                                       **CASE NO.5:04CV113-SPM/AK**

**JO ANNE B. BARNHART,**
**Commissioner of Social Security**

    **Defendant.**

_____/

**REPORT AND RECOMMENDATION**

    This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for disability insurance benefits (DIB) under Title II of the Act.

    Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are not supported by substantial evidence; thus, the decision of the Commissioner should be reversed.

A.  **PROCEDURAL HISTORY**

Plaintiff filed an application for DIB on April 30, 1999, alleging a disability onset date of January 1, 1998, because of a broken collar bone, a broken shoulder blade, cracked ribs, chipped neckbone, arthritis, and impingement syndrome in her left shoulder. Plaintiff petitioned for a hearing before an administrative law judge (ALJ), who conducted a hearing on June 31, 2003, and entered an unfavorable decision on December 10, 2003. The Appeals Council denied Plaintiff's request for review, thus making the decision of the ALJ the final decision of the Commissioner. This action followed.

B.  **FINDINGS OF THE ALJ**

The ALJ found that Plaintiff was insured for disability only through June 30, 2002. (R. 14). The ALJ also found that Plaintiff has a history of left clavicular fracture; history of disc bulge at C5/6; and history of cervical and thoracic strain which are severe impairments within the meaning of the Act, but that her allegations of pain and limitation were not credible and were unsupported by the record. (R. 22-23). The ALJ further found Plaintiff capable of a minimally restricted range of light work, such as she performed in the past, and consequently, she was not precluded from performing her past relevant work as supervisor of a janitorial service and was not disabled. (R. 23).

C.  **ISSUES PRESENTED**

Plaintiff argues that the ALJ erred in allowing the vocational expert to reclassify her past relevant work, which was unskilled, as skilled and then finding that she was capable of performing it. Plaintiff argues that her testimony about her job supervising

**No. 1:02CV125-SPM/AK**

janitorial service did not support the vocational expert's assessment of it as "skilled" or supervisory. Plaintiff also argues that the ALJ erred by not adopting the entire opinion of her treating physician, Dr. Garner, specifically his opinion that she could only lift less than 10 pounds for 1/3 of the day.

The Commissioner responds that the ALJ properly considered the treating physician's assessment and stated his reasons for rejecting the finding by Dr. Garner that she was limited to lifting 10 pounds because it was inconsistent with his last treatment notes which found only 10 % limited mobility in her shoulder area. The Commissioner also contends that the vocational expert based his assessment about the supervisory aspect of Plaintiff's past relevant work on her own testimony, in which she described working for several years and learning to supervise others from this on the job experience.

The issue thus presented is whether the Commissioner's decision that Claimant is not disabled is supported by substantial evidence in the record and decided by proper legal standards.

## D. <u>STANDARD OF REVIEW</u>

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court. The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied. <u>Graham v. Apfel</u>, 129 F.3d 1420, 1422 (11th Cir. 1997). Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). <u>Miles v. Chater</u>, 84 F.3d 1397,

**No. 1:02CV125-SPM/AK**

1400 (11th Cir. 1996).  "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam).  It is more than a scintilla, but less than a preponderance.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted).  The court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996).  It must determine only if substantial evidence supports the findings of the Commissioner.  See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam).  Even if substantial evidence exists which is contrary to the Commissioner's findings, where there is substantially supportive evidence of the Commissioner's findings, the court cannot overturn them.  Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).  Unlike the deferential review accorded to the Commissioner's findings of fact, his conclusions of law are not presumed valid.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  The Commissioner's failure to apply correct legal standards or to provide the reviewing court with an adequate basis for it to determine whether proper legal principles have been observed requires reversal.  Id. (citations omitted).

     A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  To

**No. 1:02CV125-SPM/AK**

qualify as a disability the physical or mental impairment must be so severe that claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps:

> 1. Is the individual currently engaged in substantial gainful activity?
>
> 2. Does the individual have any severe impairment?
>
> 3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?
>
> 4. Does the individual have any impairments which prevent past relevant work?
>
> 5. Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation unnecessary.  Plaintiff bears the burden of establishing a severe impairment that keeps him from performing his past work.  If Plaintiff establishes that his impairment keeps him from his past work, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments, Plaintiff can perform.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, Plaintiff must prove that he cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).  It is within

**No. 1:02CV125-SPM/AK**

the district court's discretion to affirm, modify, or reverse a Commissioner's final decision with or without remand. 42 U.S.C. § 405(g); Myers v. Sullivan, 916 F.2d 659, 676 (11th Cir. 1990).

E.     **SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY**

Dr. Lynn Garner treated Plaintiff from January 7, 1998, when she was referred by Dr. Appel following the car accident, and he treated her through April 17, 2000. (R. 141-162). X-rays taken at the initial visit were negative except for some straightening of the lordosis and a clavicular fracture. (R. 161). Other tests were ordered which revealed a 5th rib fracture and some disc bulge at C5-6. (R. 160). An MRI and CT scan were otherwise normal. (R. 158). Physical therapy was ordered and she was to be off work for four weeks. (R. 156). In June 1998, it was noted that there was some delay in bone union at the clavical break and a bone stimulator was recommended. (R. 151). She was still off work at this time. (R. 151). A CT scan taken in November 1998, showed a healed fracture. (R. 147). In December 1998, Dr. Garner found her to have no pain at the site, full shoulder motion, only slight diminution in cervical mobility, but he believed her to have sustained permanent injuries because of the soft tissue strain. (R. 146). He felt that she was unable to return to her past employment, which he characterized as heavy duty, but that she could perform sedentary type work with no lifting over 10 pounds, no pushing or pulling, or overhead work. (R. 146).

On February 17, 2000, Dr. Garner found some tenderness at the fracture site and some impingement syndrome in the shoulder. (R. 142). He referred her to

**No. 1:02CV125-SPM/AK**

Vocational Rehabilitation for some possible surgery since he felt she was not able to return to the work for which she had previously been trained.  (R. 142).  Plaintiff did not follow his suggestions because she could not get a ride and her attorney told her it would not do any good, so Dr. Garner gave her a limited prescription for Lortab and noted that he would see her on an as needed basis.  (R. 141).  Two months later, on April 17, 2000, he found her to have no tenderness at the fracture site and 10% less than full mobility of the shoulder.  (R. 141).

      Plaintiff was referred to other specialists for problems related to her injuries.

      Dr. Hornback treated Plaintiff on February 11, 1998, following her car accident for pain in her jaw and face.  (R. 133).  She was treated conservatively with soft diet and heat and reported to be pain free two weeks later.  (R. 133).

      Dr. Phillip Nunnery treated Plaintiff for her facial lacerations following her car accident, which appear minor and were fully healed within a few months, except for a small area which required excision of some foreign body under local anesthesia.  (R. 134-138).

      Notes from Dr. Shumate, whom Dr. Garner referred Plaintiff to shortly after the auto accident, ordered an MRI which revealed a mild disc bulge at C5-6.  (R. 185).

      Dr. Garner wrote up a physical assessment in August 2000, finding that she could lift less than ten pounds and for less than 1/3 of an 8 hour work day, with no limitations to her ability to stand or walk, and no climbing, crawling, reading, handling, pushing or pulling.  (R. 172-175).

**No. 1:02CV125-SPM/AK**

A non-examining state physician assessed Plaintiff on May 30, 2000, as being able to lift up to twenty pounds, 10 pounds frequently, and able to sit, stand or walk six hours a day. (R. 164). He limited her reaching and climbing because of the shoulder pain. (R. 165). He did not have her treating physician's records when he made this assessment. (R. 169).

A consultative examination was performed by Dr. E. Jacob on July 30, 2002, and he found her to have a loss of range of movement in the left shoulder with depressed biceps and radial jerks bilaterally, with sensory impairment in the thumb and index finger and cervical radiculopathy. (R. 181). His physical assessment was that she was limited to lifting up to twenty pounds, ten pounds frequently, with sitting up to 4 hours a day, standing one to two hours a day, walking less than one hour a day, and no other limitations to her upper body. (R. 183).

### F.    SUMMARY OF THE ADMINISTRATIVE HEARING

A hearing was held on July 31, 2003, at which counsel was present, as well as a vocational expert and interpreter. (R. 186). Plaintiff was from Thailand, so an interpreter was present. (R. 188). However, Plaintiff appeared to understand most of the questions presented to her in English. (R. 190). Plaintiff was born on February 20, 1950, and attended school in Thailand through the fourth grade. (R. 191). She cannot read a newspaper or write anything, but her name. (R. 191-192). She can neither add nor subtract. (R. 193). Her last job was cleaning at a daycare center. (R. 193). She also worked at a friend's restaurant as a waitress during this time. (R. 196). Plaintiff

stated that she quit work after the accident because she broke numerous bones and her doctors told her not to work. (R. 199). She has not seen Dr. Garner in two years because she did not have any money. (R. 200). Her neck continues to bother her the most causing constant pain at a level 10 on a scale of ten (the worst). (R. 200-201). She takes Tylenol only for the pain because she has no money for better medicine. (R. 201). She also has pain in her shoulder which radiates to her elbow and lower back pain. (R. 202-203). She also claims that she cannot use her left arm at all. (R. 204). Her pain is so great that it causes her to cry at least twice a day. (R. 207). Although she lives with her adult daughter and three grandchildren, she does not help with the children or the household chores. (R. 209). She watches t.v. all day. (R. 209). She has a boyfriend and they socialize. (R. 210). Plaintiff received $100,000. as a result of the lawsuit filed from her accident. (R. 212). She got the money two or three years prior to the hearing and the money was gone because she bought a car and paid everyone back who had supported her while she was not working. (R. 212). She spend none of the money on medical treatment. (R. 212). Plaintiff smokes a ½ pack of cigarettes a day and her boyfriend pays for them. (R. 213). Her boyfriend pays for everything, including her home, her food, her Tylenol. (R. 213). She has never sought treatment at a public health facility. (R. 213). The vocational expert asked Plaintiff about supervising others at the daycare, and she said she supervised, but only for a year. (R. 221). She mopped, swept, and cleaned windows at this job, but did not lift anything. (R. 214-215). She worked right along with the others. (R. 222). The ALJ gave the expert the

following hypothetical: closely approaching advanced age, unable to read and write, understands basic English, able to stand and walk six hours, sit two hours, lift and carry with her right hand up to 20 pounds, 10 pounds frequently, up to 10 pounds, 5 pounds frequently with her left hand, only occasional bending, stooping, crouching, crawling, kneeling, and climbing, no overhead use of her left arm, and no work with any significant reading or writing.  (R. 223).  The expert stated that she could perform her past relevant work as a supervisor, but not as a commercial cleaner.  (R. 224). Plaintiff's attorney and the expert discussed how Plaintiff became a skilled worker in an unskilled position, and the expert stated that she could observe over the 10 or 15 years she worked as a janitor how to supervise others and therefore acquire that skill.  (R. 224-228).

**G.     DISCUSSION**

    a)     Treating physician's opinion

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2).  Nevertheless, the ALJ may discount the treating physician's opinion if good cause exists to do so. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986).  Good cause may be found when the opinion is "not bolstered by the evidence," the evidence "supports a contrary finding," the opinion is "conclusory" or "so brief and conclusory that it lacks persuasive weight,"

**No. 1:02CV125-SPM/AK**

the opinion is "inconsistent with [the treating physician's] own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991), (citing Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)). If an ALJ rejects a treating physician's opinion, he must give explicit, adequate reasons for so doing, and failure to do so results in the opinion being deemed accepted as true as a matter of law. MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992).

At issue is Dr. Garner's physical assessment opinion that Plaintiff could lift no more than 10 pounds less than 1/3 of an 8 hour work day. (R. 172). Plaintiff argues that this opinion is contrary to the ALJ's finding that she could lift 10 pounds frequently and up to 20 pounds occasionally. Further, Plaintiff argues that the ALJ incorrectly referred to Dr. Garner's assessment as support for his findings. The ALJ stated:

> Physically, based primarily on the supported expert opinion of the reviewing doctors and the opined restrictions from Dr. Garner, it is found the claimant can lift and carry 20 pounds occasionally and 10 pounds or less more frequently with her right arm/hand and less than 10 pounds with her left arm/hand. (R. 21).

Plaintiff is correct. Dr. Garner's assessment does not support these findings. The Commissioner argues in her brief that the ALJ limited Plaintiff to less than ten pounds with her left hand and since Dr. Garner was treating Plaintiff for a left shoulder problem,

**No. 1:02CV125-SPM/AK**

it was reasonable to conclude that Dr. Garner was referring to the less than ten pound restriction as applicable to her left hand only, and thus, the ALJ's findings were in line with Dr. Garner's opinion.  This argument is a weak.  Dr. Garner did not limit his restriction to the left arm and the ALJ did not explain in his findings that he was assuming the restriction was for the left arm only.  Because Dr. Garner was Plaintiff's treating physician, the ALJ had a duty to fully explain himself when rejecting any part of Dr. Garner's opinion and he did not do this.  This is error and supports remand for additional development.

      b)    <u>Past relevant work</u>

A finding that a person can perform her past relevant work ends the five-step evaluation process at Step Four.  20 CFR § 404.1520(a)(4).  While the ALJ *may* use the testimony of a vocational expert to supplement the claimant's own testimony about how past relevant work was performed, he may also rely on other sources, including her own description of that work, and is not required to call a vocational expert for Step Four analysis.  20 CFR § 404.1560(b).

The ALJ found that Plaintiff's only past relevant work was her janitorial work at the day care center.  (R. 219).  The ALJ asked her if she supervised others there and she responded that she did so for less than a year.  (R. 221).  There was one Thai and two Filipinos and she would direct them to the jobs they were supposed to do, make sure they adhered to the schedule, and was responsible for their doing their work, but she did not make out their schedule.  (R. 221).  The actual schedule was completed by

**No. 1:02CV125-SPM/AK**

her supervisor and given to her. (R. 221). She worked right beside the others performing the same tasks that she had described earlier of washing windows, and cleaning the floors and tables. (R. 214-215, 222). The expert broke the job description into two aspects, a supervisor position and a cleaner position, and then testified that given the hypothetical posed to him, she could perform the supervisor aspect of the job, but not the cleaner aspect of the job. (R. 223-224). The testimony given by Plaintiff about her past relevant job duties was specifically that she performed **both** aspects of the job.

> INT [interpreter]: She did work as – just like the other three workers.
>
> ALJ: So, she was working alongside of them?
>
> INT: That's right. Yes, sir. (R. 222).

When the ALJ asked the expert to consider the work as she described it, he again said that she could do the supervising part, but not the cleaning part. (R. 223-224). An ALJ must consider whether the individual can perform past relevant work as it was actually performed "because individual jobs within an occupational category as performed for particular employers may not entail all of the requirements of the exertional level indicated for that category in the Dictionary of Occupational Titles and its related volumes." SSR96-8p (Assessing Residual Functional Capacity in Initial Claims). The evidence of record does not support the ALJ's finding that Plaintiff could perform her past relevant work because she was not simply supervising others, she was performing janitorial services, which the expert concluded was beyond her capabilities. Since there

**No. 1:02CV125-SPM/AK**

is no support for a finding that she could perform her past relevant work, the evaluation must proceed to the Fifth Step to show the existence of other jobs in the national economy which Plaintiff can perform.

Accordingly, it is respectfully **RECOMMENDED**:

That the decision of the Commissioner denying benefits be **REVERSED**, and this cause **REMANDED** for additional development, including, but not limited to, Plaintiff's residual functional capacity or an explanation from the ALJ as to why he rejects the opinion of her treating physician as to her RFC, and vocational expert testimony of the existence of other jobs existing in the national economy that Plaintiff could perform with her RFC.

At Gainesville, Florida, this  1st day of July, 2005.


s/ A. KORNBLUM
**ALLAN KORNBLUM
UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.

**No. 1:02CV125-SPM/AK**